JANVIER, Judge.
This ex delicto action results from an automobile collision which occurred at about 11:45 o’clock on the very rainy night of November 9th, 1948, in the lake side intersection of Claiborne Avenue with the crossing at Stadium Place, in the uptown area of New Orleans.
Claiborne Avenue is a very wide, double driveway neutral ground thoroughfare, extending from the lower limits of New Orleans to the Jefferson Parish line on the up-river side of the City.
Stadium Place is an area on the Claiborne Avenue side of the Tulane Stadium and from it there are exits which lead to crossings on Claiborne Avenue. Those crossings do not lead directly into any street on the lake side of the avenue, but the one in which this accident occurred is so near to Versailles Boulevard that to some extent the crossing is referred to, in the record, as the Versailles Boulevard crossing.
Plaintiff had driven his automobile from Stadium Place across the river-side driveway and the neutral ground of Claiborne Avenue and intended to turn in an uptown direction on the lake-side driveway and to go up Claiborne Avenue towards Carrollton Avenue. With him in his car were Ralph Roy Riera, who was seated alongside him on the front seat, Robert J. Beatson and Miss Helen Abboud, who has since become Mrs. Robert J. Beatson, who were seated on the rear seat.
Williams was alone in his car which he was driving up the lake-side roadway of Claiborne Avenue. The collision occurred just as the Colletti car had turned, or was turning to its left to go up the lake-side driveway of Claiborne Avenue.
Colletti brought suit against both Mr. and Mrs. Williams, though there is nothing whatever to show any reason for including Mrs. Williams as a defendant, and against National Casualty Company, the liability insurance carrier of Williams. He charged that Williams was at fault in operating his car at a speed greatly in excess of fifty miles an hour “in violation of City Ordinance, CCS No.-in operating his vehicle at an excessive speed on a rainy night; in not maintaining a proper lookout, and in failing to use “any of the usual or ordinary precautions,” and in failing to reduce his speed or sound his horn.
Mr. and Mrs. Williams and National Casualty Company denied that Williams was in any way at fault and averred that the cause of the accident was negligence of Colletti himself in failing to stop before driving his automobile into the traffic lane of Claiborne Avenue, in driving his automobile into the intersection directly into the path of defendant’s automobile when the said automobile of defendant was so close that it was not possible for Williams to stop or to maneuver it so as to avoid the collision, and in failing to accord to Williams the right of way to which he was entitled.
After a trial on the merits there was judgment in favor of defendants and plaintiff has appealed.
The district judge found both operators at fault and that the negligence of each had had causal connection with the ■ accident.
*872 The vital question is one of fact — whether Colletti had completed his turn into the lake-side roadway of Claiborne Avenue and had proceeded for some distance in an uptown direction when his car was run into from the rear by the Williams’ car; or whether, just as the Williams’ car was about to cross the intersection, Colletti, without warning, suddenly drove into the roadway of Claiborne Avenue in front of the Williams’ car and when it was too late for Williams to come to a stop or to swerve in an effort to avoid a collision.
Colletti insists that he had completed the turn and that he had gone from twenty to thirty feet up the avenue when his car was run into from the rear. He says that he saw the Williams’ car approaching and that it was from a block to a block and a half away, qnd that he had plenty of time to make the turn and had done so when the Williams’ car, at terrific speed, crashed into him.
Riera first said that the car had turned and had gone about 100 feet up the avenue when the collision occurred. He later corrected this and said that he meant that it had gone about 50 feet up the avenue, but still later he said that after the collision the Colletti car ran into a light post, which he says was located about 12 or 15 feet from the intersection. It is very obvious then that if the car ran into this post, which the record shows that it did, it could not have been 20' or 30 feet above the intersection when the collision occurred.
Beatson says that he looked down Claiborne Avenue, “but didn’t look too closely,” and he says “I never noticed any car at the time.” He says that Colletti turned “and the next thing I knew we were hit by the back * *
Mrs. Beatson knew nothing at all about what occurred.
Williams says that he was driving his car at a speed of between 25 and 30 miles per hour; that he saw the Colletti car as it was crossing the avenue and that Col-letti brought his car to' a complete stop or the neutral ground, and that when he, Williams,' had reached a point opposite the lower side of the crossing, Colletti suddenly drove out into the intersection in front of him. Pie says that he did not hear ány horn sounded by Colletti. He says that 'the post into which the Colletti car Crashed after the accident was about six feet above the intersection.
If there is any doubt about whether there was negligence on the part of Williams in operating his car at too high a speed, or in driving too close to the neutral ground as the district judge found, there can be no doubt of the negligence of Colletti. The record shows conclusively that he saw the Williams’ car as it was approaching the crossing and that he drove out into the intersection just as the Williams’ car reached the intersection and was about to- cross it.
Defendants argue that Colletti was at fault in attempting to drive into the roadway of Claiborne Avenue without sounding his horn and affording to other vehicles an opportunity to stop. Counsel for Williams base this argument on several decisions of this and -other courts, notably Bannon v. Picou, 15 La.App. 511, 132 So. 390, and Williams v. Lenfant, 15 La.App. 515, 131 So. 857. In those cases it was held that the driver of an automobile who attempts to cross such a neutral ground street on which there are street car tracks must “bring his car to a stop, sound his horn, arid afford to vehicles approaching on the driveway he intends to enter an opportunity to stop.”
The ordinance, by stipulation of counsel, was offered in evidence and is therefore before us. The particular provision of the ordinance, No. 13,702 C.C.S., to which counsel refer is found in Paragraph 10(b) of Article VI, and, under it, it is required that the operator of any vehicle crossing a neutral ground street on which there are street car lines “shall come to a full stop when about to leave the neutral ground and enter the roadway, shall signal with horn, and stop, * * Even if there were no such requirement in the ordinance, it is manifest that it is negligence on the part of the operator of an automobile to drive out into a thoroughfare under such circumstances without bringing it to a stop, sounding his horn and making cer *873 tain that the driver of any automobile in the roadway has an opportunity to stop and avoid an accident. Even if there were no ordinance, the action of Colletti would have been considered as negligence.
Our conclusion is that he was manifestly at fault and that there can be no recovery by him.
Accordingly the judgment appealed from is affirmed at the cost of plaintiff.
Affirmed.